**BRADBURN et al. v. FIRST CHRISTIAN CHURCH et al.**

**SAME v. WRIGHT et al.**

**Nos. 3304, 3305.**

Circuit Court of Appeals, Tenth Circuit.

Feb. 4, 1947.

Creekmore Wallace and Don Anderson, both of Oklahoma City, Okl. (B. E. Harkey, of Oklahoma City, Okl., and Roy White, of Eufaula, Okl., on the brief), for appellants.

Alfred Stevenson, of Holdenville, Okl., and Charles Champion, of Tulsa, Okl. (W. T. Anglin, Alfred Stevenson, and O. S. Huser, all of Holdenville, Okl., on the brief), for appellees.

Before PHILLIPS and MURRAH, Circuit Judges, and BROADDUS, District Judge.

PHILLIPS, Circuit Judge.

Cussehta Yarhola was a full-blood Creek Indian enrolled opposite Number 4970. The funds with which the loans hereinafter mentioned were made passed to Cussehta by the will of his deceased wife, Linda Yarhola, and his deceased daughter, Maley Fiers, full-blood Creek Indians, enrolled opposite Numbers 4971 and 4972, respectively. Such funds were not restricted. Nancy Bradburn, a daughter of Cussehta, is a full-blood Creek Indian enrolled opposite Number 4973. Lessey Hawkins Chisholm is a deceased daughter of Cussehta and was a full-blood Creek Indian enrolled opposite Number 4975.

On February 16, 1917, the County Court of Okfuskee County, Oklahoma, adjudged Cussehta an incompetent and appointed W. H. Barber as guardian of his person and estate.[1] On February 28, 1921, the County Court appointed H. G. House co-guardian of Cussehta. Thereafter, Barber resigned as guardian and H. A. Dolen was appointed co-guardian of Cussehta. House resigned as guardian in March, 1923. Thereafter, Hill Moore was appointed as co-guardian of Cussehta. Dolen and Moore served as guardians until April 28, 1924.

On April 21, 1924, Cussehta, by his next friend, L. H. McDermott, filed a petition in the County Court for restoration to capacity.[2] William L. Seawell, County Judge, certified his disqualification, and the parties to the proceeding and their attorneys filed a written stipulation agreeing that Guy L. Trimble should act as special county judge to hear the matter. The matter came on for hearing before the spe-

---

[1] See 58 Okl.St.Ann. § 852.

[2] See 58 Okl.St.Ann. § 854.

cial judge on April 28, 1924. Cussehta appeared in person, Selie, his wife, Lessey, his daughter, and Corner Hawkins, his son-in-law, appeared in person and by counsel, and Moore, one of Cussehta's guardians, appeared in person and by counsel. Dolen, the other guardian, appeared and tendered his resignation. After hearing the testimony of witnesses and arguments of counsel, the special judge found that Cussehta was a person of sound mind and fully competent and capable of managing his own estate, and that he should be restored to capacity and his guardians discharged, and ordered that Cussehta be restored to capacity, his guardians discharged, and that such guardians deliver to Cussehta all his property in their hands.

On January 12, 1915, Nancy was adjudged an incompetent by the County Court of Okfuskee County, Oklahoma. She was restored to capacity by an order of the County Court entered June 14, 1924. The facts with respect to Nancy's restoration to capacity are more fully set out in our opinion in No. 3299, Bradburn v. McIntosh, 10 Cir., 1947, 159 F.2d 925.

On September 23, 1915, the County Court of Okfuskee County, Oklahoma, adjudged Lessey an incompetent and appointed Fred L. Strough as guardian of her estate. In December, 1922, Lessey and Corner Hawkins, her husband, filed a petition in the County Court for restoration to capacity. After due notice, the petition came on for hearing on December 29, 1922. Lessey and her husband appeared in person and by their attorney, and Fred L. Strough appeared in person. After hearing evidence, the county judge found that Lessey was competent and able to care for her estate and should be restored to capacity, and ordered that she be restored to capacity, and that her guardian, Strough, be discharged, and that he file his report and deliver to Lessey all her property in his hands.

On October 4, 1922, House and Dolen, as guardians of Cussehta, made a loan of $4,000 to W. E. Rose and Jean Rose. To evidence such loan, the Roses executed to the guardians a note dated October 4, 1922, due five years after date, with interest at 8 per cent per annum, payable annually, and to secure such note the Roses executed and delivered to the guardians a mortgage on certain real estate situated in Okemah, Okfuskee County, Oklahoma.

On August 29, 1923, Dolen and Moore, as guardians of Cussehta, loaned The First Christian Church,[3] an Oklahoma corporation, at Weleetka, Oklahoma, $10,000. The loan was authorized and approved by the County Court. To evidence such loan, the Church, acting through its officers, executed and delivered to the guardians a note for $10,000, dated August 29, 1923, due August 29, 1929, bearing interest at the rate of 6 per cent per annum, payable annually, the interest being evidenced by six interest notes, each for the sum of $700. To secure such notes, the Church, acting through its officers, on the same date, executed and delivered a mortgage covering certain real estate situated in Weleetka, Okfuskee County, Oklahoma.

On April 28, 1924, Cussehta and his wife, Selie, executed trust agreements naming therein Washington Grayson and Hill Moore as trustees and transferring to such trustees certain property, including the Roses' note and mortgage and the Church note and mortgage. The original trust agreement was modified by supplemental agreements executed September 9, 1924, April 14, 1925, September 24, 1925, and July 13, 1927.

On December 19, 1929, Hill Moore resigned as trustee and D. W. Johnston was appointed as successor trustee. On the same day, Moore, as trustee, assigned to Grayson and Johnston, as trustees, the property held in the trust estate.

On March 4, 1924, the Roses conveyed the property covered by the mortgage to James C. Wright. On March 8, 1930, the Wrights executed a renewal note and mortgage to Grayson and Johnston, as trustees of Cussehta.

Cussehta died testate on November 13, 1936. His estate was administered in the County Court of Okfuskee County, Oklahoma. That Court entered a decree adjudging that the property held by the trustees was not subject to administration and

---

[3] Hereinafter called the Church.

determined that Nancy and Lessey were the heirs-at-law of Cussehta, and, as such heirs, succeeded to the trust property.

On November 29, 1937, Grayson and Johnston rendered a final account, as trustees, to Nancy and Lessey. On December 1, 1937, in cause No. 9424, in the District Court of Okfuskee County, Oklahoma, wherein Grayson and Johnston were plaintiffs and Nancy and Lessey were defendants, after a hearing, at which all parties appeared in person and by counsel, the state court entered a judgment accepting the resignation of the trustees, approving the account, terminating the trust, and discharging the trustees and the sureties on their bond. Thereafter, pursuant to such decree, Grayson and Johnston assigned and transferred all the trust estate to Nancy and Lessey. Thereafter, Nancy and Lessey, by mutual agreement, divided the assets which came to them from the trust by proper conveyances and assignments. The Wright note and mortgage were assigned and transferred to Lessey. Thereafter, Lessey assigned such note and mortgage to House, and, thereafter, the Wrights paid House in full the principal and interest of such note.

In March, 1938, Nancy, Roy Bradburn, her husband, Lessey, and House, acting as their agent, after inspecting the Church property and consulting with the officials of the Church as to the possibility of the Church's being able to pay the note, offered to compromise and settle the mortgage indebtedness for $3,900. The Church was unable to raise that amount, but a third person agreed to advance $3,000 in cash, and certain members of the Church agreed to execute their promissory note for $900, due six months after date. On March 11, 1938, Nancy and Lessey, accepted the $3,000 in cash and the $900 note in settlement of the mortgage indebtedness. On March 12, 1938, House, as attorney in fact for Nancy and Lessey, executed and delivered to the Church a release of the Church mortgage. The signers of the $900 note paid the principal and interest thereon.

On February 20, 1943, Nancy, by Sukey Jenkins, her daughter and next friend, George Chisholm, Administrator of the estate of Lessey Hawkins Chisholm, the heirs of Lessey, George Chisholm, Sam Buck, Ben Hawkins, and Bill Hawkins, by his guardian, K. C. Burnham, brought this action against the Church, D. W. Johnston, and H. G. House seeking a decree canceling the release of the Church mortgage, and a judgment for the principal and accrued interest on the Church note, and for the foreclosure of the Church mortgage. From a judgment in favor of the defendants below, plaintiffs below have prosecuted an appeal numbered 3304 on the docket of this court.

On April 3, 1943, Nancy, by Sukey Jenkins, her daughter and next friend, George Chisholm, Administrator of the estate of Lessey Hawkins Chisholm, the heirs of Lessey, George Chisholm, Sam Buck, Ben Hawkins, and Bill Hawkins, by his guardian, K. C. Burnham, and Roy D. Taylor, Administrator of the estate of Cussehta, brought this action against the Wrights seeking a decree canceling the assignment of the Roses' note and mortgage by Moore, as guardian, to Cussehta, the assignment of such note and mortgage from Cussehta to Moore and Grayson, trustees, the assignment of the Wrights' note and mortgage by Lessey to House, and for a judgment on such note for the principal and accrued interest, and for the foreclosure of such mortgage. From a judgment in favor of the Wrights, the plaintiffs below have prosecuted an appeal numbered 3305 on the docket of this court.

As grounds for the relief sought, Nancy set up that the orders of the County Court restoring Nancy, Lessey, and Cussehta to capacity were void, that she was incompetent in fact, and a charge of fraud.

In each action, Nancy seeks through equitable relief to have the note and mortgage set up therein restored to her, a judgment on the note for the principal and accrued interest thereon, and for the foreclosure of the mortgage securing such note. She does not seek independent relief against House and the trustees on the ground of fraud.

The trial court found that the evidence failed to establish that Lessey was incompetent in fact after December 30, 1922,

or that Cussehta was incompetent in fact after April 28, 1924, the dates of their respective restorations to capacity; that Nancy was competent in fact on and after June 14, 1924; and that the evidence wholly failed to establish any fraud or conspiracy on the part of the defendants in either of the two cases.

For the reasons stated in our opinion in Bradburn v. McIntosh, (No. 3299), 159 F.2d 925, we hold the respective orders of the County Court restoring Nancy, Lessey, and Cussehta to capacity are not void and are not open to collateral attack.

The proof wholly failed to establish that any officer or agent of the Church, or that either of the Wrights, participated in, or had knowledge of, any fraud practiced on Nancy. Hence, Nancy, was not entitled to any equitable relief with respect to the orders of the County Court, the judgment of the District Court, or the instruments sought to be canceled as against the Church or the Wrights.[4]

In accordance with the compromise agreement entered into between the Church, Nancy, and Lessey, the Church paid the amount Nancy and Lessey agreed to accept to discharge the note and mortgage. There was no proof of any fraud that would taint such compromise agreement. Nancy and Lessey were in possession of the note and mortgage. The Church had the right to rely on the orders and judgments of the County Court, the state District Court, and the instruments by which title to the Church note passed to Nancy and Lessey.

The Wrights likewise had the right to rely on the orders and judgments of the County Court and the state District Court and the instruments by which their note and mortgage were finally transferred to Nancy and Lessey. Thereafter, Nancy transferred the Wright note and mortgage to Lessey and Lessey transferred them to House. Acting in good faith, the Wrights paid the note to House, the holder of such note.

Nancy and Lessey took the benefits of the Cussehta trust under the decree of the District Court of Okfuskee County, and thereby ratified the validity of the trust. Nancy and Lessey could not accept and retain the benefits of the trust and repudiate the payment made by the Wrights to the trustees and the release of the Wright mortgage made by the trustees. Lessey's heirs claim through her and are in no better position than Lessey would be, if living. Nancy and Lessey, acting through House as their agent, accepted the $3,000 in cash advanced by a third person and the $900 note executed by third persons in satisfaction of the Church note and mortgage. Thereafter, they received payment of the $900 note with interest. They cannot retain the benefits of the transaction and repudiate the release of the Church mortgage made by House, as their agent.[5]

It follows that the notes were discharged by the respective makers thereof and Nancy was not entitled to recover judgment upon either of such notes.

Affirmed.

---

[4] Bradburn v. McIntosh, 10 Cir., 159 F.2d 925.

[5] Bradburn v. McIntosh, 10 Cir., 159 F.2d 935.